D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
————————————————————X

ZENEL PALJEVIC
        Plaintiff,

-against-                                MEMORANDUM & ORDER
                                                  06-CV-1196 (NGG) (RML)

BUILDING SERVICE 32B-J HEALTH FUND

        Defendant.
————————————————————X

GARAUFIS, United States District Judge:

Plaintiff Zenel Paljevic ("Plaintiff" or "Paljevic") brought this action to challenge the denial of his application for a disability pension under a pension plan provided by his former employer. Defendant, the Building Service 32B-J Pension Fund (the "Fund" or "Defendant"), is a multi-employer employee benefit fund that provided and administered the pension plan at issue here. The Fund, which is administered by an equal number of union and management trustees, is regulated by the Employee Retirement and Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. Defendant moves for summary judgment in its favor. Plaintiff cross-moves for summary judgment. For the reasons given below, Defendant's motion is GRANTED, and Plaintiff's cross motion is DENIED.

I.    **Factual Background**

Plaintiff Paljevic worked as an janitor from approximately 1990 through August 31, 2003. (Plaintiff's Verified Complaint ("Compl.") at ¶ 7.) Plaintiff was also a participating member in a disability pension fund that was administered by Defendant Fund. (Plaintiff's Statement of Material Facts ("Pl. 56.1") ¶ 1; Defendant's Statement of Material Facts ("Def. 56.1") ¶ 3.) Plaintiff joined the Fund on May 1, 1990. (Pl. 56.1 ¶ 1; Def 56.1 Ex. G.)

1

The Pension Fund Agreement and Declaration of Trust ("Fund Agreement") grants Defendant discretion to consider all factual and legal questions relating to benefit eligibility. (Def. 56.1 ¶ 1 and Ex. A at Article V, § 1(e).) The Fund Agreement specifically states that the Fund's trustees have "the power . . . [t]o decide, in the Trustee's sole discretion, all questions (both factual and legal) relating to the eligibility or rights of Participants or Beneficiaries for Benefits under the Plan, and the amount and kind of all Benefits to be paid under the Plan." (Fund Agreement at Def 56.1 Ex. A, Article V, § 1(e) at 12.) The pension plan states that eligibility for a disability pension requires "total and permanent disability while working in covered employment, and that total and permanent disability is the inability to perform any gainful employment." (Def. 56.1 ¶ 27 and Ex. B.)

Plaintiff claims that, due to "injuries on his lower back, both knees, right elbow, neck, and resulting mental impairments" he sustained on August 31, 2003, he was no longer able to work at all, a contention that is at the heart of this case. (Compl. ¶ 8.) It is not disputed that Plaintiff's last day in covered employment was August 31, 2003. (Def. 56.1 ¶ 3 and Ex. 3.) As a result of those injuries, Plaintiff states that he received Social Security disability benefit payments and workers' compensation benefits. (Id. ¶ 9.) He applied to the Fund for a disability pension on December 9, 2003. (Pl. 56.1 ¶ 2; Def. 56.1 ¶ 4 and Ex. C.) On that application, Plaintiff listed his orthopedic doctor, a Dr. S. Aleksic of Brooklyn, New York ("Aleksic"), as his attending physician. (Pl. 56.1 ¶ 3; Def. 56.1 Ex. C.) According to Defendant, the application was also accompanied by Aleksic's Statement of Disability, in which Aleksic wrote that Plaintiff was totally disabled for any occupation for an "indefinite time," and by a Workers' Compensation physician form. (Def 56.1 ¶¶ 5-6 and Exs. D, E.) Defendant also states

2

that the application was accompanied by magnetic resonance imaging ("MRI") reports, although Plaintiff does not mention these reports. (Def. 56.1 ¶ 6 and Ex. F.)

After processing Plaintiff's application, see Pl. 56.1 ¶ 4; Def. 56.1 ¶ 8 and Ex. G, Defendant referred Plaintiff for an independent medical exam ("IME") with a Dr. Lester Lieberman ("Lieberman"), located in New York, New York. (Pl. 56.1 ¶ 5; Def. 56.1 ¶ 9 and Ex. H.) Defendant retained Lieberman's services "to determine whether [Plaintiff] is totally and permanently disabled as a result of his condition." (Def. 56.1 Ex. H.) Lieberman conducted an IME with Plaintiff on February 9, 2004. (Pl. 56.1 ¶ 6; Def. 56.1 ¶ 11) By letter dated the same day, Lieberman informed the Fund of his opinion that Plaintiff could not perform janitorial work but could maintain gainful employment in a sedentary position. (Pl. 56.1 ¶ 6; Def. 56.1 ¶ 11 and Ex. J.) Lieberman's report, in pertinent part, contained the following findings:

(1) Plaintiff was injured while "picking up heavy books when a trash can fell on top of him and the trash can made him fall to the floor. He injured his shoulders, knees, legs, lower back, right hand, and elbow. He had cuts on his knees. He was unconscious for 20 minutes. He went to NYU Downtown Hospital on August 31, 2003 by ambulance. He had x-rays taken and was given medication" (Def. 56.1 Ex. H);

(2) Plaintiff complained, inter alia, of "dizziness and nervousness. He has pain in the head, neck, back, chest, right and left shoulders, right arm, right leg, left leg, right knee, left knee, right foot, and left foot. He has numbness in the right foot and right hand. He has difficulty in walking, bending, sleeping, lifting, and moving the right leg" (id.);

(3) Plaintiff "worked as a janitor, 40 hours a week. He had to lift 40-60 pounds. He stood eight hours. He has not worked since the incident" (id.); and

(4) After conducting a physical examination, Lieberman found that:

3

He cannot toe walk. He can heel walk and stand well. He has a lumbar corset, which he removed. . . . There were no lateralizing signs to suggest herniated discs in the cervical and lumbar spine. I did not find any evidence of tears to the rotator cuff. His tenderness in the knees was over the patella, not over the area of the joint line. Despite the MRI showing tears of the medial meniscus, the physical findings were not suggestive of tears of the medial meniscus. <u>He is not totally disabled. He can perform gainful employment in a sedentary position; however, he cannot go back to performing janitorial work.</u>

Id. (emphasis added).

By letter dated March 8, 2004, Defendant informed Plaintiff that the Fund had denied Plaintiff's application for disability benefits based on Lieberman's report. (Pl. 56.1 at ¶ 7; Def. 56.1 ¶ 12 and Ex. K.) That letter noted that "Section 4.11 of the Pension Plan document provides that a participant is totally and permanently disabled if, on the basis of medical evidence satisfactory to the Board of Trustees, he or she is found to have become, while working in covered employment, totally and permanently <u>unable</u>, as a result of bodily injury or disease, <u>to engage in any further employment or gainful pursuit.</u>" (Def. 56.1 Ex. K (emphasis in original).) The letter also stated that "[t]he Fund has determined that your condition does not meet the above-described eligibility standard, based upon" Lieberman's finding that Plaintiff was "not totally and completely unable to work in any capacity for any occupation." (Id.) The letter advised Plaintiff of his right to appeal the decision by written request filed with the Appeals Committee within 180 days after the date of receipt of the letter. (Id.)

By letter dated April 1, 2004, Plaintiff's son, Dzevat Paljevic, appealed the Fund's denial on behalf of Plaintiff. (Pl. 56.1 ¶ 8; Def. 56.1 ¶ 13.) In that letter, Plaintiff's son wrote that Plaintiff had been treated by three different doctors: Aleksic, a Dr. Lango ("Lango"), and a Dr. Jorge Rinsky of Brooklyn, New York ("Rinsky"). (Pl. 56.1 ¶ 8 and Ex. A; Def. 56.1 ¶¶ 14-16.) The letter explained that Rinsky, a psychiatrist, had found that Plaintiff suffered from: "Severe

4

headaches, Poor concentration, Depressive mood, Anhedonia, Maladjusted [sic], . . . [D]izziness, Insomnia, Defficet [sic] memory, Poor concentration, Lack of energy, Obtunded [sic] emotional reaction, Deterioration of mental status, Suffering in his self-esteem, . . . Feeling[s] of incompetent and insufficient worker, Tensions, and Jitters." (Pl. 56.1 ¶ 8; Def. 56.1 ¶ 16 and Ex. O.) Plaintiff's letter attached two reports by Rinsky, one dated January 12, 2004 and another that, apparently inadvertently, bears two dates, June 10, 2004 and June 14, 2004. (Pl. 56.1 ¶ 9 and Ex. B.) Rinsky's reports both state that "[a]ll of the patient's symptoms, complaints and clinical findings are clearly related to the work related accident as described. The patient's past psychiatric history is non contributory." (Pl. 56.1 Ex. B.) Both reports further state that Plaintiff is "100%" disabled. (Id.) Defendant states that Plaintiff's appeal was accompanied by Rinsky's diagnosis of "100% psychiatric disability." (Def. 56.1 ¶ 16.) Plaintiff's son's letter was also accompanied by a report from Aleksic, who indicated that Plaintiff was "totally disabled" (Pl 56.1 ¶ 10; Def. 56.1 ¶ 15 Ex. Q), by a report from Lango, dated February 17, 2004, stating that Plaintiff was disabled (Pl. 56.1 ¶ 10; Def. 56.1 ¶ 14), and by a Notice of Award from the Social Security Administration, dated March 28, 2004, stating that Plaintiff became disabled under Social Security rules effective August 31, 2003 (Def. 56.1 ¶ 17 and Ex. P).

The appeal was processed by Defendant (Def. 56.1 ¶ 20 and Ex. S) and by letter dated May 10, 2004 in which Defendant referred Plaintiff for a second IME by another orthopedist, a Dr. Edward Toriello of Middle Village, New York ("Toriello"). (Pl. 56.1 ¶ 11; Def. 56.1 ¶ 20 and Ex. S.) Like the letter to Lieberman for the first IME, Defendant's letter to Toriello also indicated that the Fund was retaining Dr. Toriello's services "to determine whether [Plaintiff] is totally and permanently disabled as a result of his condition." (Def. 56.1 Ex. S.) Toriello examined Plaintiff on May 24, 2004. (Pl. 56.1 ¶ 12; Def. 56.1 ¶ 22 and Ex. U.) By letter dated

the same day, Toriello informed the Fund of his opinion that Plaintiff was not totally disabled and was "able to work without restriction." (Id.) Toriello's report, in pertinent part, contained the following findings:

(1) Plaintiff stated that he was a 51-year-old janitor who reported that "on August 31, 2003 he was lifting garbage when he fell and the garbage fell on top of him causing him to injure his neck, his lower back, his right elbow, his knees, his right shoulder and his ankles. He denies prior injury to these areas of his body." (Def. 56.1 Ex. U.)

(2) Plaintiff "was taken to NYU Hospital on the day of the accident, treated and released. He has not received any hospitalization or surgery due to the injuries sustained in his accident. He presently receives physical therapy at the rate of 2 to 3 [times] a week. He denies any past surgical or medical history. The claimant is presently taking Analgesics. He states he has not returned to work due to the injuries sustained in his accident." (Id.)

(3) Plaintiff complained of "neck pain, low back pain, right elbow pain, knee pain, right shoulder pain and ankle pain." (Id.)

(4) Physical examination revealed:

> [E]vidence of a resolved cervical hyperextension injury, resolved low back strain, resolved right elbow contusion, resolves right shoulder strain, resolved knee contusions and resolved ankle sprains. He has inconsistencies in his physical examination. <u>He is not totally disabled and he is able to work without restriction.</u> [Plaintiff] reveals no evidence of continued disability from the Orthopaedic injuries sustained in the accident. . . . [Plaintiff] does not require any further physical therapy treatment. Based on the history as given by [Plaintiff], review of records and the physical examination, the injuries appear to be causally related to the accident.

(Id.) (emphasis added).

In an undated memorandum after Plaintiff's second IME with Toriello, an employee of Defendant's named A. V. Dascoli summarized Plaintiff's claim for Defendant's Appeals

6

Committee. (Pl. 56.1 ¶ 13 and Ex. C; Def. 56.1 ¶¶ 23, 25 and Ex. X.) That memorandum makes no mention of any of Plaintiff's alleged psychiatric disabilities. (See id.) Defendant states that it sent Plaintiff a letter, dated June 8, 2004 explaining that Plaintiff had a right to appear before the Appeals Committee. (Def. 56.1 ¶ 24 and Ex. W.) Defendant further states that Plaintiff appeared before the Appeals Committee on June 22, 2004. (Def. 56.1 ¶ 26.)

By letter dated June 25, 2004, Fund Chief Executive Officer Mary Ellen Boyd wrote Plaintiff to inform him that his appeal had been denied. (Pl. 56.1 ¶ 14; Def. 56.1 ¶ 26 and Ex. Y.) That letter stated that Defendant denied the appeal based upon Toriello's and Lieberman's IMEs. It further stated that it considered medical records and reports submitted by Plaintiff, including (i) Aleksic's report, (ii) Lango's report, (iii) Rinsky's report, (iv) various MRI reports, (v) a notice of award in favor of Plaintiff from the Social Security Administration dated March 28, 2004, and (vi) "the entire file records." (Def. 56.1 Ex. Y.)

Defendants have submitted an affidavit from Sandra Reinhold ("Reinhold"), a registered nurse, an employee of Defendant's, who reviewed Plaintiff's application and attested to the considerations that Defendant used to deny benefits. (Sandra Reinhold Affidavit, dated March 1, 2007 ("Reinhold Aff."), docket entry #17.) In that affidavit, Reinhold states that before she left Defendant's employ in January 2007, her job responsibilities included reviewing disability benefits applications and making recommendations to the Fund trustees. She states that she reviewed Plaintiff's application, including all medical records and reports, on May 4, 2004, after receiving Plaintiff's son's letter appealing the initial denial. (Id. ¶¶ 1, 2, 5.) In that affidavit, Reinhold sets forth her rationale for Defendant's having denied his appeal, as follows:

(i) Plaintiff's application was accompanied by a statement by Aleksic (id. at 3) that Aleksic's initial report made no reference to any psychiatric disability or psychiatric symptoms

7

and reported solely back, neck, shoulder and knee pain and no mental or emotional problems (id. ¶¶ 6), that Aleksic is both a neurologist and a psychiatrist (id. at 7), and thus Aleksic's failure to report "any psychiatric problems therefore seemed particularly significant" (id.);

(ii) Plaintiff's own application form, dated three months after the injury, similarly did not mention any mental or emotional problems (id. ¶ 8);

(iii) "[n]one of the other various reports submitted prior to the initial denial made any mention of a psychiatric disability" and the initial denial was made solely on the basis of Plaintiff's claim of an orthopedic disability (id. ¶ 9);

(iv) Plaintiff's appeal was accompanied by only one report that mentioned psychiatric problems (Rinsky's) and that Aleksic's second report again set forth no psychiatric disabilities, only radiculopathy and herniation (id. ¶ 10);

(v) Rinsky's report was dated January 12, 2004, and received by the Defendant on April 7, 2004, Rinsky's examination was conducted four-and-a-half months after Plaintiff stopped working, and the medications Rinsky listed as those he prescribed for Plaintiff were "all fairly common prescriptions for mild depression" (id. ¶ 11);

(vi) "It was clear from Dr. Rinsky's narrative report that Mr. Paljevic's feelings of depression and lack of energy began some time after he was injured and stopped working, and progressively got worse as time went on. He mentions severe headaches without any time frame, but none of the other reports made mention of headaches" (id. ¶ 12); and

(vii) Defendant sent Plaintiff for a IME to a second orthopedic doctor, Toriello, but that Plaintiff "did not relate any mental or emotional problems to Toriello, and the only medications he was using were analgesics, contradicting the report of Dr. Rinsky" (Id. ¶ 15).

Thus, Reinhold states that she relied on the medical evidence to support a conclusion that

8

even if Plaintiff had a psychiatric disability, Defendant believed Plaintiff's disability "developed well after he left employment, and was a by-product of his perceived inability to work." (Id. ¶ 13.) Reinhold further states that she decided not to send Plaintiff for a psychiatric IME, calling such an examination "pointless, as a current examination would not have changed the fact that his current condition arose after leaving covered employment." (Id. ¶ 15.) She felt that "[a] mental disorder that arose while the individual was still working and forced him or her to stop, permanently, would be the basis of a disability pension; but Mr. Paljevic ceased working due to his physical injuries and then later (according to Dr. Rinsky) developed psychiatric problems arising from the situation." (Id.)

Plaintiff initiated this ERISA action on March 13, 2006. (See Complaint ("Compl.") docket entry # 1.) In the first of four causes of action, Paljevic alleges that Defendant "did not adequately consider and/or ignored the nature and extent of" his medical condition. (Id. ¶ 11.) In his second cause of action, Plaintiff alleges that Defendant, in evaluating Plaintiff's claim, used a standard that is "vague, . . . arbitrary and capricious. in that [Defendant] did not consider all available medical evidence; and/or acknowledged that the plaintiff was impaired but found he was capable of 'some type' of employment. [Defendant] never specified what jobs were available in the economy that plaintiff could perform." (Id. ¶ 14.) Plaintiff, in the third cause of action, alleges that Defendant defined "the term 'disabled' calculated to deny persons such as plaintiff a disability pension despite the fact that plaintiff worked for many years and was otherwise medically entitled to a disability pension" and that "[t]he standard utilized by the defendant is not applied uniformly, is arbitrary, and . . . was applied capriciously against the plaintiff." (Id. ¶ 16.) Finally, Plaintiff, in the fourth and final cause of action, alleges that Defendant's denial of Plaintiff's disability pension benefits was "discriminatory in nature and

9

based on race and ethnic background of the plaintiff." (Id. ¶ 19.)

## II. Legal Analysis

### A. Summary Judgment Standard of Review

When deciding a motion for summary judgment, this court must view the evidence in the light most favorable to the non-moving party and must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Vann v. City of New York, 72 F.3d 1040, 1048-49 (2d Cir. 1995). Even in a fact-intensive case, however, the court will not accept as fact mere allegations lacking evidentiary support. Abdu-Brisson v. Delta Air Lines, 239 F.3d 456, 466 (2d Cir. 2001).

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," Fed. R. Civ. P. 56(c), i.e., "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "A fact is 'material' for these purposes if it might affect the outcome of the suit under the governing law. An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz, 258 F.3d at 69 (citations and quotation marks omitted).

The moving party bears the burden of establishing the absence of a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). If the moving party has met this burden, then the non-moving party has the burden of "set[ting] forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The nonmovant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified

disputed material facts, or defeat the motion through mere speculation or conjecture." W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990) (internal quotations and citations omitted); see also Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Rather, the nonmovant can create a genuine issue of material fact only by citing competent, admissible evidence. Glasso v. Eisman, Zucker, Klein & Ruttenberg, 310 F. Supp. 2d 569, 574 (S.D.N.Y. 2004) (citing Sarno v. Douglas Elliman-Gibbons & Ives, 183 F.3d 155, 160 (2d Cir. 1999)).

The issue before the court is whether either party is entitled to a judgment as a matter of law based on the review that Defendant conducted in denying Plaintiff's application for disability benefits. See Fed. R. Civ. P. 56. In reaching this decision, I am not called upon to consider whether Plaintiff indeed really had a psychiatric disability or, if he did, whether the job-related injury itself – rather than a prolonged period of unemployment – was the proximate cause of that psychiatric disability. Rather, in reviewing these cross motions for summary judgment, the issues before this court are: (i) whether there exists any material factual disagreement about what steps Defendant took to review Plaintiff's disability claims and (ii) whether Defendant's review was in fact legally sufficient under applicable ERISA standards.

1.  **Agreement on Materially Important Facts**

The facts relating to Defendant's denial of Plaintiff's claim for disability benefits are not in dispute, particularly because the factual circumstances are well documented. Both parties agree and the record supports the fact that: (i) Plaintiff suffered from a work-related injury that included orthopedic injuries and applied thereafter for disability benefits from Defendant; (ii) Plaintiff's initial application did not mention psychiatric or psychological ailments stemming from the injury, and his doctor found him to be totally disabled for an indefinite period of time; (iii) Defendant's doctor, pursuant to an IME, found Plaintiff to be able to perform sedentary

employment; (iv) based on that IME, Defendant denied Plaintiff's application, and Plaintiff appealed, enclosing letters from three doctors, one of whom – a psychiatrist – stated that Plaintiff suffered from psychological disabilities in addition to orthopedic ones; (v) Defendant sent Plaintiff for a second IME from another orthopedist, who found Plaintiff able to work without restriction; (vi) based on that IME and the records submitted by Plaintiff, Defendant rejected Plaintiff's appeal. It is also beyond factual dispute that: (i) the Fund Agreement governs the Fund's trustees' authority and granted the Defendant authority to decide, in the trustees' sole discretion, all legal and factual questions relating to participants' eligibility for benefits; and (ii) the pension plan states that eligibility for benefits requires total and permanent disability while working in covered employment, as defined by the inability to perform any gainful employment.

The crux of the disagreement is whether Defendant should have more adequately pursued Plaintiff's claimed psychological disability in addition to his claimed orthopedic disability. Plaintiff claims that Defendant was wrong not to do so, including not ordering a follow-up psychological IME or by giving more credence to Rinsky's diagnosis, and thus he was harmed. Conversely, Defendant claims that it found Plaintiff's claims of psychological disability to lack merit and thus did not order a follow-up psychological IME for that reason, something that is in its sole purview to adjudge. Regardless, both sides agree that a follow-up psychological IME was not ordered and that Plaintiff's appeal was denied based on the two IMEs. Since there is no disagreement of any material fact about what steps Defendant took before denying Plaintiff's claim, I find that summary judgment is appropriate as a matter of law. Holtz, 258 F.3d at 69.

### B. ERISA Standard of Review

A plaintiff may sue to enforce the terms of an employee benefit plan or pension plan under ERISA and a "denial of benefits challenged under [ERISA] is to be reviewed under a de

novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). However, a court's review is substantially more deferential when a plan's trustees are given such discretion; if the plan gives the administrator such authority, courts should use a more deferential standard: whether the Fund's review was "arbitrary and capricious." Id.

Thus, the first question before me is whether Defendant's plan conferred discretionary authority on its trustees. As the Second Circuit held in Nichols v. Prudential Ins. Co. of America, 406 F.3d 98, 108 (2d Cir. 2005), "[a] reservation of discretion [by a plan administrator] need not actually use the words 'discretion' or 'deference' to be effective, but it must be clear." (citing Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 251 (2d Cir. 1999)). The Nichols court further held that: "Examples of such clear language include authorization to resolve all disputes and ambiguities, or make benefits determinations in our judgment. In general, language that establishes an objective standard does not reserve discretion, while language that establishes a subjective standard does." Id. (quotation marks and citation omitted). Furthermore, the Second Circuit held in Kintsler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 252 (2d Cir. 1999) that:

> Though we reiterate that no one word or phrase must always be used to confer discretionary authority, the administrator's burden to demonstrate insulation from de novo review requires either language stating that the award of benefits is within the discretion of the plan administrator or language that is plainly the functional equivalent of such wording.

In this case, I find that the Fund Agreement clearly and unequivocally grants to the trustees the sole discretion to consider all factual and legal questions relating to benefit eligibility. See Fund Agreement at Def 56.1 Ex. A, Article V, § 1(e) at 12 (specifically stating

13

that the Fund's trustees have "the power . . . [t]o decide, <u>in the Trustee's sole discretion</u>, all questions (both factual and legal) relating to the eligibility or rights of Participants or Beneficiaries for Benefits under the Plan, and the amount and kind of all Benefits to be paid under the Plan") (emphasis added). The Fund's pension plan states that eligibility for a disability pension requires total and permanent disability while working in covered employment and further defines "total and permanent disability" as the inability to perform any gainful employment. (<u>See</u> Def. 56.1 Ex. B.) Moreover, the Trust Agreement clearly gives the trustees the sole discretion to establish procedures for carrying out the pension plan's purpose. (Fund Agreement at Def 56.1 Ex. A at Article V, § 1(e) at 12.) However, while the pension plan does lay out a specific definition of "total and permanent disability," the trustees are left with the sole power to determine what type of medical evidence satisfies that requirement. The pension plan indicates that the Trustees will determine whether total and permanent disability exists and that the Trustees' determination of the application of the Plan's provisions will be final and binding. (<u>See</u> Def. 56.1 Ex. B.)

Thus, I find that the language is clearly objective and the Fund Agreement makes it absolutely clear that Defendant has broad discretion to determine eligibility issues. <u>See, e.g.</u>, <u>Nichols</u>, 406 F.3d at 108. Accordingly, I will review Defendant's decision to deny Plaintiff's claim under the "arbitrary and capricious" standard set forth by <u>Firestone Tire</u> and its progeny. I also note that, in any event, the Plaintiff does not appear to contest the court's use of this standard. <u>See</u> Plaintiff's Memorandum of Law in Support of Plaintiff's Cross-Motion for Summary Judgment ("Pl. Cross Motion") at 3 ("The question presented is whether the Fund's failure to have the plaintiff evaluated by a psychiatrist renders its finding that the plaintiff was capable of gainful employment arbitrary and capricious.").

The next question for the court is what behavior on Defendant's behalf would be considered "arbitrary and capricious." The Second Circuit has made it clear that this court may overturn Defendant's denial of benefits under the arbitrary and capricious standard of review "only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law." Pulvers v. First Union Life Ins. Co., 210 F.3d 89, 92 (2d Cir. 2000) (citations and quotation marks omitted); accord Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir.1995). "Substantial evidence," in turn, is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker and] . . . requires more than a scintilla but less than a preponderance." Miller v. United Welfare Fund, 72 F.3d 1066, 1072 (2d Cir. 1995) (quotation marks and citation omitted). Furthermore, "[i]n making this determination, ordinarily the district court may consider only the administrative record that was before the plan administrator at the time of its decision. Id. This scope of my review is narrow, and I am "not free to substitute" my own judgment for that of the Fund's trustees as if I "were considering the issue of eligibility anew." Pagan, 52 F.3d at 442. In making this determination, I must ask "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Jordan v. Retirement Comm., 46 F.3d 1264, 1271 (2d Cir. 1995) (quotation marks omitted).

The Fund's decision to deny Plaintiff his disability benefits was neither clearly erroneous nor unsupported by the facts. With regard to the initial application, Plaintiff's initial benefits application to the Fund made no mention of any psychological infirmities. Plaintiff listed only one doctor, Aleksic, who made no reference to any psychological symptoms but stated that Plaintiff was totally disabled from any occupation for an indefinite time. Defendant had Plaintiff independently examined by Lieberman, who found Plaintiff able to perform sedentary work.

The Fund is entitled to rely on the determinations of its own independent physicians over the findings of doctors proffered by Plaintiff. "[A] plan need not accord the insured's treating physician greater deference than a plan's retained physician." Demirovic v. Building Service 32 B-J Pension Fund, 467 F.3d 208 (2d Cir. 2006) (citing Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003). In Demirovic, the Second Circuit (dealing with the same defendant as in the instant case) further noted that, "[a]lthough plan administrators may not arbitrarily refuse to credit the reliable evidence put forth by a claimant, there is no heightened burden of explanation when they reject a treating physician's opinion." (quotation marks and citations omitted). Furthermore, as we know from Reinhold's affidavit, Defendant considered the fact that Plaintiff's initial application, which was dated three months after the work-related injury, failed to report any psychological issues and was accompanied by numerous reports, none of which made any mention of a psychiatric disability. Although it seems to be a disputed fact whether Aleksic is (in addition to being an orthopedist) also a psychiatrist and neurologist, compare Reinhold Aff. ¶ 7 with Pl. Cross Motion ¶ 3, Defendant – possibly erroneously – also believed that Aleksic's failure, as a supposed psychiatrist and neurologist, to report "any psychiatric problems therefore seemed particularly significant." It is also undisputed that Lieberman, who conducted Plaintiff's first IME, found Plaintiff able to perform sedentary work and that Plaintiff did not complain of any psychological symptoms in that examination. Thus, I find that the initial denial was based on a consideration of the relevant factors and do not find any clear error of judgment.

The crux of Plaintiff's argument seems to be with the appeals process. Plaintiff claims that Defendant should have given more credence to Paljevic's claimed psychological symptoms in considering his appeal. Since I am not reviewing this appeals decisions de novo, I am

16

constrained to disagree. Indeed, with his appeal, Plaintiff submitted letters from Aleksic, Lango, and Rinsky, all of whom found Plaintiff "100%" disabled. Of those additional doctors, only Rinsky diagnosed Plaintiff with a psychological disability. Defendant's own independent doctor, Toriello, found Plaintiff "able to work without restriction." Again, Defendant is entitled to credit Toriello's findings over that of Plaintiff's treating physicians. Plaintiff asserts that it was arbitrary and capricious for Defendant not to order a psychological evaluation in addition to the Toriello IME. However, I am unconvinced: Defendant has sufficiently outlined the many reasons that it did not do so: (i) Plaintiff's appellate claims of psychological disabilities were unconvincing in light of his failure to mention them, months after the injury, in his primary application and his treating physician's failure to diagnose them; (ii) Aleksic's second report again set forth no psychological disabilities, even months later; (iii) Rinsky's psychological evaluation was conducted four-and-a-half months after Plaintiff stopped working, and "[i]t was clear from Dr. Rinsky's narrative report that Mr. Paljevic's feelings of depression and lack of energy began some time after he was injured and stopped working, and progressively got worse as time went on (Reinhold Aff. ¶ 12); (iv) Rinsky's letter was inconsistent with the other doctors', in that Rinsky mentions severe headaches with no time frame, but none of the other reports mention headaches at all; (v) Rinsky's letter lists medications for Plaintiff that Defendant believed to be fairly common prescriptions for mild depression; and (vi) Plaintiff made no mention of any mental or emotional problems to Toriello, who conducted the second IME. Reinhold, in her affidavit, accordingly noted that she believed a follow-up independent psychological examination would have been pointless and inconclusive, since psychological symptoms could stem from unemployment rather than physical injury, and unnecessary, since it was not supported by the evidence.

Under the deferential "arbitrary and capricious" standard under which I must review the Fund's determination, I have to reject Plaintiff's rationale that Defendant "simply ignored the plaintiff's complaints of poor concentration, insomnia, lack of energy and depression and the findings of his psychiatrist." (Pl. Cross Motion at 4.) Defendant has given a number of reasons that it denied Plaintiff's claims, all of which are reasonable, supported by substantial evidence, and not erroneous as a matter of law. I find Defendant's decision to be based on a consideration of the relevant factors and, finding no clear error of judgment, I cannot upset a reasonable interpretation by the Fund's trustees. Bowman Transp., Inc. v. Arkansas-Best Freight System, 419 U.S. 281, 285 (1974). Plaintiff has failed to present anything that, even if viewed in the light most favorable to him, supports a finding that Defendant acted in an arbitrary and capricious manner in denying his claim for disability benefits.

Finally, I turn to the fourth claim in Plaintiff's complaint, that Defendant's denial of his disability pension benefits was "discriminatory in nature and based on race and ethnic background of the plaintiff." I find that Plaintiff has advanced absolutely nothing to support this position: he has not even said what his race or ethnic background is. He gives no explanations whatsoever to support this claim. Title VII states, in pertinent part, that "it shall be an unlawful employment practice for an employer . . . to discharge any individual, or to otherwise discriminate against any individual with respect to [his] compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin." 42 U.S.C. §2000e-2(a). A plaintiff asserting a Title VII claim bears the burden of first establishing a *prima facie* case of discrimination. McDonnell Douglas Corp. v. Green, 414 U.S. 792, 802 (1973). To establish a *prima facie* case, the plaintiff must show (1) that he was a member of a protected class, (2) that he was qualified for the position, (3) that he suffered an

adverse employment action, and (4) that the circumstances under which the adverse action occurred gave rise to an inference of discrimination. Id.; see also Meiri v. Dacon, 759 F.2d 989, 995 (2d Cir. 1985). At the summary judgment stage then, Plaintiff cannot rely on conclusory allegations, but must present sufficient, specific evidence of each element of a prima facie case of discrimination. Dister v. Continental Group, Inc., 859 F.2d 1108 (2d Cir. 1988). I will thus grant a defendant summary judgment where a plaintiff fails to establish that the circumstances surrounding the conduct complained of permit an inference of discrimination. See, e.g., Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14 (2d Cir.1995) (affirming summary judgment for an employer where a Hispanic employee's discrimination claim was insufficient to give rise to an inference of discrimination); Ludovicy v. Dunkirk Radiator Corp., 922 F.2d 109 (2d Cir.1990) (affirming summary judgment for an employer where an employee's discrimination claim was factually unsupported). I find Plaintiff's fourth claim to be conclusory and totally unsupported by any evidence.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED and Plaintiff's cross motion for summary judgment is DENIED.

SO ORDERED.

Dated: June 26, 2007
Brooklyn, N.Y.

/signed/
NICHOLAS G. GARAUFIS
United States District Judge